Nott, J.,
delivered the opinion of the court:
This suit is prosecuted in the name of Barrow, Porter & Co. It appears in the evidence that the firm was an ordinary partnership, but it does not appear either in the title of the case or in the allegations of the petition who the partners were. Neither is it set forth in the request for findings of fact who the parties are who now prosecute the case, though the evi-. dence indicates that some members of the firm have died, and that there are surviving partners.
The suit embraces three distinct causes of action, and, so far as the Indian defendants are concerned, is against three: *56 different parties defendant. That is to say, the depredations were committed by different tribes of Indians and at different times and places.
The claimants being the same, and the principal defendant, the United States, being the same, it is supposed by the court that the several causes of action have been brought together in one suit for convenience of parties. But in the final disposition of the case several judgments must be entered against the parties severally interested.
The claims set up in these three cases exceed in quantity and amount the claims filed with Congress and the Secretary of the Interior.
The depredations complained of were all committed during the year 1859. The Indian depredation act provides:
“That no claim accruing prior to July 1,1865, shall be considered by the court unless the claim shall be allowed, or has been, or is pending prior to the passage of this act, before the Secretary of the Interior or the Congress of the United States, or before any superintendent, agent, subagent, or commissioner authorized under auy act of Congress to inquire into such claims.” (Sec. 2.)
Upon this question of limitation presented by the statute, the court is of the opinion that no greater quantity (that is, no greater number of horses, mules, etc.) can be the subject of present relief than the claimants specified when they originally filed their claims — that the additional quantity is barred by the statute.
With regard to value, the court does not consider the ad damnum of the claims filed as controlling. If a horse was valued at $200, the claimants are still at liberty to show that the animal was worth $225. But while the court does not consider an increase of valuation as being barred by the statute, it is still thought that the valuation put upon the property by the owners while the transaction was contemporaneous can not be disregarded, because there is now evidence, resting more or less upon the opinion of witnesses, that the property was of greater value.
In the case against the Mohave Indians it appears that the depredations were committed in February and July, 1859, on the Colorado River. The attacking party numbered about 200 men. Military operations against the Mohaves had begun on *57 the 9th of January, when the troops of the United States had killed ten or fifteen Indians. The Indians had been so hostile and so formidable that Colonel Hoffman, commanding, had thought it prudent to fall back from Lieutenant Beale’s crossing on the Colorado, “ making a forced march the first day, and traveling to Marl Springs before pitching camp, a distance of 60 to 65 miles.” He also subsequently went to San Francisco for reinforcements. When the second depredation was committed, July 20, 1859, the Indians were still in “open hostility.” The court is therefore of the opinion'that the suit against the Mohave Indians and the United States must be dismissed for want of jurisdiction.
In dealing with the question of the amity of the Mohaves, the court has used what appear to be unsigned and unexe-cuted affidavits. These papers, it is insisted by the Assistant Attorney-General, are copies of affidavits filed by the claimant in Congress. That fact is probable, but is not shown by evidence. The papers, however, were filed in the Department by the claimants in support of their case, and they are treated by the court as admissions on the part of the claimants. The statements in these papers, which the court has relied upon, relate to the movements of troops, and if they are erroneous the claimants should have shown it by producing the reports of the officers named in these afQ davits.
In the case against the United States and the Navajo Indians it appears that the depredation was committed in January, 1859, near Zuni Station, New Mexico. Undoubtedly war then had previously existed. On the 3d September, 1858, Lieutenant-ColonelMiles reports to the Adjutant-General “ that oñ the 29th ultimo, Captain McLane, Mounted Bifles, was attacked by a party of Navajoes,” of whom he killed six or eight, and that “ this fight has precipitated matters and makes war inevitable.” “ I shall commence operations,” he adds, “in the field on the 8th instant.” On the 1st October, 1858, Colonel Bonneville reports to Army headquarters:
“ The Lieutenant-General is aware at the time I came into command of the department, September 16, hostilities had already com’menced. Negotiations, however, were still pending, and, as a precautionary measure, I issued orders for the troops most distant to approach to support the negotiations, defend the settlement, and, if necessary, to take the field. The war had actually commenced before the companies had arrived at the posts assigned them.”
*58 But in December, 1858, Colonel Bonneville began negotiations for a treaty, and on the 25th December an agreement was signed by the Indians, which, if ratified by the President and the Senate, would have become a treaty. Upon the signature of this treaty, Colonel Bonneville, in General Orders, Ho. 11, declared the war with the Navajoes to be at an end.
On the 8th January, 1859, in his report to the headquarters of the Army, he says: “I hold 21 Navajoes, prisoners taken during the war. I have withdrawn the troops.” He also says that he “believes the Indians sincere in their desire for peace,” and that the disposition of troops which he has made “will serve to quiet the uneasy feeling and excitement on the frontier, consequent upon the late military operations.” Undoubtedly there was at the time of the depredation this “uneasy feeling and excitement,” such as generally follows all wars — a situation requiring the presence of the military arm — but it seems clear to the court that this war with the Navajoes began on the 29th of August, 1858, and ended on the 25th December.
The claim presented to the Interior Department for these depredations of the Navajoes was for 14 mules, at $200, amounting to $2,800. The court is satisfied that that was the reasonable value of the property.
In the case against the Cosnejo Indians and the United States no hostilities appear, and the depredations were a simple carrying off of property without bloodshed. The claim presented to the Interior Department was for 5 mules and 1 mail coach, amounting to $1,250. The court is satisfied that that was the reasonable value of the property.
The court is not satisfied that Patrick L. McLaughlin, who is shown by the evidence to have been one of the partners in the firm of Barrow, Porter & Co., and foreign born, was a citizen of the United States at the time when the depredations were committed, and the court is, therefore, without jurisdiction of his portion of the claims, and that portion as shown by the evidence is one-sixth. The recovery, therefore, must be limited to five-sixths of the amounts previously indicated as the recovery in these cases.
The claimants will amend their petition so as to show the persons who constituted the firm of Barrow, Porter & Co., and the partners who are now prosecuting these cases with leave to the defendants to answer if they be so advised. Judgment *59 will be entered dismissing tbe case against the United States and the Mohave Indians for want of jurisdiction. Judgment against the Navajo and Cosnejo Indians will be suspended.